**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| ANNA ARTHURS, | ) | |
|       **Plaintiff** | ) | **Civil Action No. 13-6 Erie** |
| | ) | |
|     **v.** | ) | |
| | ) | **Chief Judge Conti** |
| THEODORE RACE, et al., | ) | **Magistrate Judge Baxter** |
|       **Defendants.** | ) | |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

### I.     RECOMMENDATION

It is respectfully recommended that the Commonwealth Defendants' partial motion for summary judgment [ECF No. 67] be granted.

### II.     REPORT

#### A.     Relevant Procedural History

On January 9, 2013, Plaintiff Anna Arthurs filed a civil rights complaint pursuant to 42 U.S.C. § 1983, against: Theodore Race ("Race"), an officer with the Pennsylvania State Police in Kane, Pennsylvania; Sherman Shadle ("Shadle"), an officer with the Pennsylvania State Police who was Sergeant of the Kane, Pennsylvania police barracks at all times relevant to this case; and Steven Hale ("Hale"), an officer with the Mt. Jewett Borough Police Department (for convenience, Defendants Race and Shadle are herein collectively referred to as "Commonwealth Defendants"). Plaintiff alleges that Defendants violated her rights under the fourth and fourteenth amendments to the United States Constitution, as follows: (1) Defendant Race used excessive force against, and unreasonably seized, Plaintiff when he allegedly assaulted Plaintiff during a birthday party that was given for her at the Mt. Jewett Fire Hall on October 15, 2011; (2)

Defendant Shadle knew, or had reason to know, that Defendant Race had allegedly used excessive force in the line of duty on at least one previous occasion, yet failed to limit his duties or properly train, supervise, control, and discipline him accordingly; and (3) Defendant Hale maliciously prosecuted criminal charges against Plaintiff arising from the night of the incident, which were ultimately terminated in her favor.

The parties have completed discovery. On May 18, 2013, the Commonwealth Defendants filed a partial motion for summary judgment seeking entry of judgment in favor of Defendant Shadle on Plaintiff's claims against him, as a matter of law.[1] Plaintiff has since filed a brief in opposition to Defendant's motion [ECF No. 73]. This matter is now ripe for consideration.

### B.    Standards of Review

Federal Rule of Civil Procedure 56(c)(2)  provides that summary judgment shall be granted if the "pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Rule 56(e)(2) further provides that when a motion for summary judgment is made and supported, "an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must – by affidavits or as otherwise provided in this rule – set out specific facts showing a genuine issue for trial.  If the opposing party does not so respond, summary judgment should, if appropriate, be entered against that party."

A district court may grant summary judgment for the defendant when the plaintiff has failed to present any genuine issues of material fact. Fed.R.Civ.P. 56(c). The moving party has

---

[1]

There is some indication in the record that Plaintiff's claims against Defendants Race and/or Hale have been, or are in the process of being, settled, although nothing has been finalized on the docket. (ECF No. 73, Plaintiff's opposition brief, at p. 2 n. 1; ECF No. 60, Minute Entry of February 6, 2015 settlement conference before District Judge Lisa Pupo Lenihan). Thus, all Defendants remain in this case pending further documentation from the parties confirming settlement of any or all of Plaintiff's claims against Defendants Race and/or Hale.

the initial burden of proving to the district court the absence of evidence supporting the non-moving party's claims. Celotex Corp. v. Catrett, 477 U.S. 317, 330 (1986); Andreoli v. Gates, 482 F.3d 641, 647 (3d Cir. 2007); UPMC Health System v. Metropolitan Life Ins. Co., 391 F.3d 497, 502 (3d Cir. 2004).

The burden then shifts to the non-movant to come forward with specific facts showing a genuine issue for trial. Fed.R.Civ.P. 56(e); Williams v. Borough of West Chester, Pa., 891 F.2d 458, 460-461 (3d Cir. 1989)(the non-movant must present affirmative evidence - more than a scintilla but less than a preponderance - which supports each element of his claim to defeat a properly presented motion for summary judgment). The non-moving party must go beyond the pleadings and show specific facts by affidavit or by information contained in the filed documents (i.e., depositions, answers to interrogatories and admissions) to meet his burden of proving elements essential to his claim. Celotex, 477 U.S. at 322. See also Saldana v. Kmart Corp., 260 F.3d 228, 232 (3d Cir. 2001). The non-moving party "must present more than just bare assertions, conclusory allegations or suspicions to show the existence of a genuine issue." Garcia v. Kimmell, 2010 WL 2089639, at * 1 (3d Cir. 2010) quoting Podobnik v. U.S. Postal Serv., 409 F.3d 584, 594 (3d Cir. 2005).

When considering a motion for summary judgment, the court is not permitted to weigh the evidence or to make credibility determinations, but is limited to deciding whether there are any disputed issues and, if there are, whether they are both genuine and material. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). The court must consider the evidence, and all reasonable inferences which may be drawn from it, in the light most favorable to the non-moving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). See also El v. SEPTA, 479 F.3d 232, 238 (3d Cir. 2007).

A material fact is a fact whose resolution will affect the outcome of the case under applicable law. Anderson, 477 U.S. at 248. Summary judgment is only precluded if the dispute about a material fact is "genuine," i.e., if the evidence is such that a reasonable jury could return a verdict for the non-moving party. Id. at 247-249.

### C.    Discussion

The Commonwealth Defendants seek summary judgment on Plaintiff's claims against Defendant Shadle, which are based upon supervisory liability. Specifically, Plaintiff claims that Defendant Shadle failed to properly train, supervise, control, and discipline Defendant Race when he knew or should have known that Defendant Race had a history of using unnecessary force against civilians while in the course of his duties. (ECF No. 1, Complaint, at ¶¶ 38-40).

In order to prevail on a § 1983 claim against a supervisor, a plaintiff must show either that (1) the supervisor directly participated in violating a plaintiff's constitutional rights; (2) that he directed others to do so; or (3) as the officer in charge, the supervisor had knowledge of and acquiesced in constitutional violations committed by subordinates. Beers–Capitol v. Whetzel, 256 F.3d 120, 134 (3d Cir.2001); see also Baker v. Monroe Twp., 50 F.3d 1186, 1193–94 (3d Cir.1995); Andrews v. City of Phila., 895 F.2d 1469, 1478 (3d Cir.1990); Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir.1988). Here, Plaintiff's claims against Defendant Shadle are based on the latter premise.

To establish knowledge and acquiescence of a subordinate's misconduct, a plaintiff must allege the defendant's (1) contemporaneous knowledge of the offending incident or knowledge of similar incidents in the past, and (2) actions or inactions which communicated approval of the subordinate's behavior. See C.H. ex rel. Z.H. v. Oliva, 226 F.3d 198, 202 (3d Cir.2000). A failure to train only amounts to deliberate indifference "where the need for more or different training is

obvious" and the lack of training can be expected to result in constitutional violations. Carter v. City of Phila., 181 F.3d 339, 357 (3d Cir.1999), citing City of Canton v. Harris, 489 U.S. 378, 388 (1989).

Here, according to Defendant Race's "Officer History" submitted by Plaintiff, there were three separate allegations of excessive use of force that were reported against Defendant Race prior to Defendant Shadle's tenure as Race's supervisor, which began in November 2010. These allegations were reported on January 29, 2007, October 30, 2007, and February 10, 2009. (ECF No. 74, Plaintiff's Concise Statement of Material Facts Not in Dispute, at ¶ 9; ECF No. 75-1, Plaintiff's Exhibits, at pp. 18-19). However, the record indicates that the first incident report was withdrawn on April 26, 2007, thus leaving two reported incidents that were actually pursued against Defendant Race. (ECF No. 75-1, at p. 18). The October 30, 2007, incident report resulted in the issuance of an unspecified Disciplinary Action Report ("DAR"); while the third incident report stemmed from a tasing incident that allegedly occurred on June 7, 2008, which resulted in a civil lawsuit that was filed with this Court on January 16, 2009 (Jennifer Coldren v. Com. of Pa., Bureau of State Police and Theodore Race, C.A. No. 09-10 (hereinafter referred to as the "Coldren case")). (ECF No. 75-1, pp. 2-10). The Coldren case was ultimately settled by the parties, with no admission or finding of liability on the part of Defendant Race, on or about March 8, 2012 (ECF No. 75-1, p. 16; ECF No. 78, pp. 7-8).

Plaintiff asserts that Defendant Shadle knew or should have known of the prior allegations of excessive force against Defendant Race by virtue of the fact that the Coldren case was ongoing when Shadle became Race's supervisor, and "he was made aware that a 'litigation hold' was in place." (ECF No. 73, Plaintiff's opposition brief, at p. 5). Plaintiff asserts further that Shadle's alleged knowledge of the excessive force allegations against Defendant Race in the

*Coldren* case should have prompted him to discover the other allegations of excessive force contained in Defendant Race's "Officer History." However, there is no evidence of record to substantiate Plaintiff's assertions that Shadle was familiar with the *Coldren* case, knew of plaintiff's allegations of excessive force in that case, or was aware of any other past allegations of excessive force contained in Defendant Race's Officer History. In fact, according to Defendant Shadle's deposition testimony, he had no knowledge of any past allegations of excessive force against Defendant Race. In particular, in response to questioning by Plaintiff's attorney, Defendant Shadle testified as follows:

> Q.     Okay. When you began as sergeant in Kane, did you receive any information from any source that Trooper Race had been accused of using excessive force in the past?
>
> A.     No.
>
> Q.     You didn't. Did you receive any information that he had exercised poor judgment in the line of duty?
>
> A.     No.
>
> Q.     Did you receive any information that he had been dishonest?
>
> A.     I don't believe so.
>
> Q.     Okay. Do you know of any formal complaints that have been filed against Trooper Race previous to you assuming the role of station commander?
>
> A.     No.
>
> Q.     Had he ever been the subject of an IAD investigation prior to your arrival?
>
> A.     I have no idea.

(ECF No. 70-1, Defendant Shadle's deposition testimony, at pp. 9-10 (internal pp. 32-33)).

                        *                    *                    *

Q.  Okay. You're familiar with the Jennifer Coldren lawsuit that was filed against Trooper Race?

A.  No.

Q.  That was not during your time of supervision?

A.  Doesn't sound familiar.

Q.  Okay. That was where a female in a bar in Bradford was tased.

A.  I don't know anything about that.

Q.  Okay. So that information was never given to you when you came aboard as sergeant, that there had been an IAD complaint against Trooper Race alleging wrongful use of force against a civilian?

A.  When did that occur?

Q.  June 7, 2008.

A.  I don't know anything about it.

(Id. at p. 11 (internal p. 40)).

                    *                    *                    *

Q.  Do you know the total number of misconduct complaints that have been made against Trooper Race?

A.  No.

Q.  The [October 30, 2007] incident that we talked about a few minutes ago, are you aware of whether or not there was a DAR generated as a result of that incident?

A.  I am not.

Q.  Okay. So you were – you never were given the DAR against Trooper Race to review?

A.  No, I was not.

Q.  Okay. Are you aware that during that incident, he was found to have exercised inappropriate force?

A.    I don't know any details of the incident or the investigation or the outcome.

(Id. at p. 14 (internal p. 52)).

*                    *                    *

Q.    Okay. Then on February 10, 2009, I believe this was the civil case brought by Jennifer Coldren that was referenced earlier. It says, litigation hold; allegations: Excessive use of force; attorney work product; May 4th, 2009. And there's no indication of how that was resolved. You apparently were unaware of that; is that correct?

A.    I get litigation hold memos for lawsuits that my troopers are involved in, but I don't have the details of what the incidents are.

Q.    Okay. So you were not made aware that there was an allegation that he used excessive force, apparently, in February of 2009?

A.    I don't believe so.

(Id. at p. 22 (internal pp. 83-84).

Moreover, Defendant Shadle testified that any information regarding IAD investigations of Defendant Race was not kept in his supervisor file at the Kane barracks, but was maintained in his personnel file in Harrisburg, to which Defendant Shadle did not have access. (Id. at p. 24, (internal p. 92)). Significantly, Defendant Shadle's deposition testimony is uncontradicted by any evidence of record.

There being no record evidence supporting Plaintiff's allegation that Defendant Shadle knew of any past excessive force allegations against Defendant Race, Plaintiff's claim is essentially based upon Defendant Shadle's constructive knowledge of the same by virtue of his supervisory status. However, such a claim is not actionable. See McQueen v. Phila. Hous. Auth., 2003 WL 22533726, at *3 (E.D.Pa. Sept. 26, 2003) (holding that a plaintiff may not allege that a supervisory defendant had constructive knowledge of a subordinate's unconstitutional conduct simply because of his role as a supervisor) (citations omitted).

Accordingly, the Commonwealth Defendants' partial motion for summary judgment as to Plaintiff's claims against Defendant Shadle should be granted.

## III.    CONCLUSION

For the foregoing reasons, it is respectfully recommended that the Commonwealth Defendants' partial motion for summary judgment [ECF No. 67] be granted, that judgment be entered in favor of Defendant Shadle and against Plaintiff on Plaintiff's supervisory liability claim, and that Defendant Shadle be terminated from this case.

In accordance with the Federal Magistrates Act, 28 U.S.C. § 636(b)(1), and Fed.R.Civ.P. 72(b)(2), the parties are allowed fourteen (14) days from the date of service to file written objections to this report and recommendation.  Any party opposing the objections shall have fourteen (14) days from the date of service of objections to respond thereto.  Failure to file objections will waive the right to appeal.  Brightwell v. Lehman, 637 F. 3d 187, 193 n. 7 (3d Cir. 2011).

s/Susan Paradise Baxter
SUSAN PARADISE BAXTER
United States Magistrate Judge

Date:   November 23, 2015

cc:     The Honorable Joy Flowers Conti
        Chief United States District Judge